UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X
                             :

AYLEEN JAMES,                  :

                             :

            Plaintiff,         :

                             :        20-cv-10565 (LJL)

      -v-                :

                             :       <u>OPINION AND ORDER</u>

BOROUGH OF MANHATTAN COMMUNITY  :
COLLEGE, EVA KOLBUSZ-KIJNE, CITY    :
UNIVERSITY OF NEW YORK,          :

                             :

            Defendants.      :

                             :

--------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Defendants Borough of Manhattan Community College ("BMCC"), Eva Kolbusz-Kijne

("Kolbusz-Kijne"), and City University of New York ("CUNY" and collectively "Defendants"),

move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint against

them.  Dkt. Nos. 15, 25.

      For the following reasons, the motion to dismiss is granted.

## BACKGROUND

      The following facts are taken from Plaintiff's pleadings, its attachments and those

documents incorporated by reference, unless otherwise stated, and are taken as true for purposes

of this motion to dismiss.[1]

---

[1] In Plaintiff's opposition to Defendants' motion to dismiss, "Plaintiff asks that the Court read
any new additional facts asserted in this opposition brief as supplementing the operative
complaint, as the Court may do with pro se litigants." (citing *Nielsen v. Rabin*, 746 F.3d 58, 63
(2d Cir. 2014) (overturning the district court's grant of dismissal where the complaint and
opposition papers to a motion to dismiss when combined stated a claim upon which relief could

Plaintiff Ayleen L. James ("James" or "Plaintiff") self-identifies as a 73-year-old African American woman.  She was employed as an adjunct lecturer in Defendant BMCC's Speech, Communications, and Theatre Arts Department from 2001 until the spring of 2019.  Dkt. No. 2-3 ¶ 5.  On May 24, 2018, Plaintiff was appointed a one-year guidance position as an adjunct lecturer and was mentored by Daphne Sicre, Deputy Chair and SPE Courses Coordinator.  *Id.* ¶ 8.  During that time, she "received numerous letters or emails from students" and "in spring 2019 was nominated for the BMCC Distinguished Teacher Award."  *Id.*  She received two satisfactory peer observations during the one-year guidance process.  *Id.* ¶ 11.

Plaintiff makes a number of complaints about her treatment during the one-year guidance process, including that Sicre did not offer advice or a plan that would improve Plaintiff's student evaluations or observe any of the three Speech 100 classes that were assigned to Plaintiff, suggest faculty workshops that would benefit Plaintiff, or invite Plaintiff to visit her class.  *Id.* ¶ 11.  Sicre also did not provide advice on Plaintiff's revised syllabi.  *Id.*  Plaintiff also alleges that the Speech Department did not support her efforts to improve the teaching and learning environment in her classes and did not offer suggestions on how to work with students across skill and academic preparation levels or review her student outcomes.  *Id.* ¶ 12.  In addition, Plaintiff complains that the guidance appointment letter did not set forth the acceptable rating or student evaluations necessary to obtain a three-year teaching contract.  *Id.* ¶ 16.

On May 13, 2019, Plaintiff was denied a three-year adjunct teaching contract with the Speech Department.  *Id.* ¶ 7.  She asserts "[o]n information and belief" that the decision was based on Plaintiff's gender, race, and age.  *Id.*  Specifically, she alleges that she was the oldest

---

be granted)).  The Court has construed the additional facts from Plaintiff's opposition to supplement her initial complaint.

African American woman serving as a Speech Department adjunct lecturer eligible for the three-year adjunct teaching contract and that Speech Department adjuncts given the contract were white males, one older white female, and one Black female who was younger than Plaintiff. *Id.* ¶ 9.

On June 24, 2019, the Professional Staff Congress, Plaintiff's union ("Union"), filed a Step One Grievance to contest Plaintiff's denial of the three-year adjunct teaching contract. *Id.* ¶ 10. The Step One Grievance was later amended on October 3, 2019. *Id.* On December 4, 2019, the Union filed a Step Two Grievance. Dkt. No. 2-3 ¶ 10. The Union held a Step Two Grievance hearing on February 24, 2020. *Id.* ¶ 17.[2]

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 5, 2020. Dkt. No. 2-1. On September 8, 2020, the EEOC dismissed Plaintiff's complaint and issued Plaintiff her Right to Sue letter. Dkt. No. 2-2. Plaintiff alleges that the EEOC Dismissal and Right to Sue Letter were post-marked September 12, 2020, Dkt. No. 2-3 ¶ 10, but that she received the letter on September 15, 2020,[3] Dkt. No. 2 at 6. The EEOC found based on its review of the evidence that it was "unable to conclude that the information obtained establishes violations of the statutes." Dkt. No. 2-2 at 1.

Plaintiff filed her complaint on December 14, 2020. Dkt. No. 2. Her complaint brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-17, 42 U.S.C. § 1981, the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634, the New

---

[2] Defendants' motion to dismiss notes that both grievances resulted in a dismissal, finding no evidence of age or race discrimination, but these facts are not alleged or referenced in Plaintiff's complaint or opposition, and therefore the Court has not considered them in deciding Defendants' motion to dismiss. Dkt. Nos. 15-5, 15-6.

[3] Plaintiff's complaint lists some pertinent dates, including these, with the year 2019, instead of 2020, but notes that this was a "typo" in her response to Defendants' motion to dismiss. Dkt. No. 26 at 5.

York State Human Rights Law, N.Y. Ex. Law §§ 290–297, and the New York City Human

Rights Law, N.Y. City Admin Code. §§ 8-101 to 131, and alleges that Defendants discriminated

against her on the basis of her race as an African-American, her sex as a woman, and her age.  *Id.*

at 3–4.  The form complaint alleges that Defendants took the following adverse actions against

Plaintiff: (1) did not hire her; (2) terminated her employment; (3) did not promote her; (4)

provided her with terms and conditions of employment different from those of similar

employees; (5) retaliated against her; and (6) harassed her and created a hostile work

environment.  *Id.* at 5.  Plaintiff also alleges that Defendants did not provide a comprehensive

review of her 18-year employment record, did not offer her employment opportunities, and

provided erroneous information related to employment.  *Id.*  She claims that her employer should

compensate her for denial of a three-year adjunct teaching contract and for other employment

opportunities denied.  *Id.* at 6.

## PROCEDURAL HISTORY

On December 14, 2020, Plaintiff filed suit against Borough of Manhattan Community

College and Eva Kolbusz Kijne.[4]  Dkt. No. 2.  On June 16, 2021, Defendants filed a motion to

dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Dkt. No. 15.  On June

25, 2021, the Court ordered Defendant CUNY be added to this matter and served with a copy of

Plaintiff's complaint.  Dkt. No. 20.  On July 26, 2021, counsel for Defendants moved for the

Court to deem Defendant BMCC and Eva Kolbusz-Kijne's motion to dismiss as filed on behalf

of Defendant CUNY as well; the Court granted the motion on July 27, 2021.  Dkt. Nos. 24, 25.

On August 20, 2021, Plaintiff filed a response to Defendants' motion to dismiss.  Dkt. No. 26.

---

[4] In Plaintiff's initial filing, Defendant Kolbusz-Kijne's name is misspelled as "Kolbusz-Kijine."

On August 31, 2021, Defendants filed a reply in further support of their motion to dismiss.  Dkt. No. 27.

## STANDARD OF REVIEW

On a 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and draw all possible inferences from those allegations in favor of the plaintiff. *See York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir.), *cert. denied*, 537 U.S. 1089 (2002).  This requirement "is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  A complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).  The ultimate question is whether "[a] claim has facial plausibility, [i.e.] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx v. Siracusano*, 563 U.S. 27, 46 (2011).

Although, as indicated, Plaintiff's complaint is to be "generously and liberally construed," *Kadosh v. TRW, Inc.*, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994), a pro se plaintiff is nevertheless required to satisfy the same pleading requirements as a plaintiff proceeding with the aid of counsel.  A pro se plaintiff's "[b]ald assertions and conclusions of law

are not adequate to withstand a motion to dismiss." *Ruotolo v. Fannie Mae*, 933 F. Supp. 2d

512, 524–25 (S.D.N.Y. 2013) (quoting *Wilson v. Dalene*, 699 F. Supp. 2d 534, 554 (E.D.N.Y.

2010)).  Furthermore, a court "cannot invent factual allegations that [the *pro se* plaintiff] has not

pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

 In ruling on Defendants' motions to dismiss, the Court may consider not only the

complaint but also Plaintiff's "relevant filings with the EEOC and other documents related to

plaintiff's claim, even if they are not attached to the complaint, so long as those filings are either

incorporate[d] by reference or are integral to and solely relie[d] upon by the complaint."

*Littlejohn v. City of New York*, 795 F.3d 297, 305 n.3 (2d Cir. 2015) (internal citation and

quotation marks omitted).  Here, Plaintiff's EEOC filing was attached to her complaint and thus

is part of her complaint.  Therefore, the facts regarding the EEOC filing as well as those alleged

in the EEOC filing are properly before the Court on Defendants' motion to dismiss.  Dkt. No. 2-

1.

**DISCUSSION**

 Defendants move to dismiss Plaintiff's complaint in its entirety for the following reasons:

(1) Defendant BMCC is not a proper party to this action; (2) Plaintiff failed to file a notice of

claim; (3) the § 1983, NYSHRL and NYCHRL claims against Defendant Eva Kolbusz-Kijne fail

to plausibly plead personal involvement; (4) there is no individual liability for the Title VII and

ADEA claims against Kolbusz-Kijne; (5) there is no private right of action for § 1981 claims; (6)

to the extent Plaintiff's § 1981 claims can be construed as § 1983 claims, Plaintiff fails to state a

claim for municipal liability; (7) Plaintiff has failed to exhaust her administrative remedies for

her gender discrimination, disparate treatment, and hostile work environment under Title VII and

the ADEA; (8) Plaintiff's federal and state claims are partially time-barred by the applicable

statute of limitations; (9) Plaintiff fails to plausibly plead a claim of race, age, or gender discrimination, failure to promote, hostile work environment, or disparate treatment under the applicable statutes; and (10) Plaintiff fails to state a prima facie claim of retaliation under the applicable statutes.

In her response, Plaintiff concedes the following points: (1) BMCC is not a proper party to this action and the claims should have been asserted against CUNY; (2) she failed to file notice of claim and therefore the NYSHRL and NYCHRL claims against CUNY are properly dismissed; (3) her claims against Kolbusz-Kijne should be dismissed for lack of personal involvement and/or lack of individual liability; (4) her § 1981 should be construed as a claim under § 1983; and (5) she has failed to exhaust her administrative remedies with regard to gender.  Dkt. No. 26 at 4 n.3.

Accordingly, (1) BMCC is dismissed from this action and CUNY is substituted in its place; (2) all claims are dismissed against Kolbusz-Kijne;[5] (3) the NYSHRL and NYCHRL claims are dismissed for failure to file a notice of claim[6] and failure to state a claim for relief against Kolbusz-Kijne; (4) the § 1981 claim is dismissed; and (5) claims for gender discrimination are dismissed for failure to exhaust administrative remedies.

---

[5] It is well-established that there is no individual liability under the ADEA and Title VII.  *See Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012) ("Employers, not individuals, are liable under Title VII."); *Martin v. Chemical Bank*, 1997 U.S. App. LEXIS 32022, at *8–9 (2d Cir. 1997) (ADEA); *Santiago v. Axis Specialty U.S. Servs., Inc.*, 2021 WL 639527, at *12 (S.D.N.Y. Feb. 16, 2021) ("There is no individual liability under Title VII."); *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 687 (S.D.N.Y. 2012) (Title VII).

[6] Even if Plaintiff had filed notice of a claim, the NYSHRL and NYCHRL claims are also time-barred by the statute of limitations.  *See* N.Y. Educ. Law § 6224(1); N.Y. Gen. Mun. Law § 50-i(1)(c); *McKie v. LaGuardia Community Coll./CUNY*, 85 A.D.3d 453, 454 (N.Y. App. Div. 2011) ("[T]he statute of limitations for [] employment discrimination claims [against the City University of New York] is one year and 90 days . . . not three years.").  In this case, the challenged actions occurred on or before May 13, 2019, and Plaintiff's complaint was filed on December 14, 2020, approximately four months after the statute of limitations had run.

Furthermore, Plaintiff's Title VII and ADEA claims concerning her 2018 appointment to the one-year adjunct lecturer position with guidance and the incidents that occurred within that guidance period are similarly time-barred, as they were not filed with the EEOC "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see also* 29 U.S.C. § 626(d). Plaintiff filed her EEOC complaint on March 5, 2020, and therefore any claim relating to an alleged discriminatory act that occurred prior to May 10, 2019 is untimely and must be dismissed. *See Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004) ("§ 2000e–5(e)(1) 'precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period . . . .'") (emphasis omitted) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002)).

Defendants argue that Plaintiff's Title VII and ADEA claims are similarly time-barred, but this assertion is contradicted by the complaint, the allegations of which the Court must assume to be true for purposes of this motion. A plaintiff has 90 days to file a Title VII or ADEA action after receipt of the notice of her right to sue. 42 U.S.C. § 2000e-5(f)(1). There is a presumption that the notice from the government agency was mailed on the date shown on the notice, and that the mailed notice was received three days after its mailing. *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525–26 (2d Cir. 1996). This presumption is not dispositive if the claimant presents "sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail." *Id.* at 526. Defendants point to Plaintiff's allegation that the letter containing the notice was "post marked September 12, 20[20]," Dkt. No. 2-3 ¶ 10, but earlier in her complaint, she writes that she received the notice on "September 15, 20[20]," Dkt. No. 2 at 6. Although the presumption would establish receipt of this notice on

September 11, 2020, Plaintiff's allegation that she received the notice on September 15, 2020 is sufficient to rebut the presumption for purposes of this motion to dismiss. *See Friedman v. Swiss Re Am. Holding Corp.*, 512 F. App'x 94, 96 (2d Cir. 2013) (summary order) (finding that a plaintiff's statement of the date he received the notice in a complaint filed "under penalty of perjury . . . is sufficient to rebut the three-day presumption").

The Court now addresses the remaining issues.

## I.      Race and Age Discrimination

A plaintiff can establish a prima facie case of discrimination sufficient to survive a motion to dismiss "[i]f she makes a showing (1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311 (emphasis in original).

Here, there is no dispute that Plaintiff is a member of two protected classes under Title VII and the ADEA, respectively: she is African-American and was 72 years old at the time of the alleged adverse action. *See* 42 U.S.C. § 2000e-2; 29 U.S.C. § 631(a) (explaining that the ADEA applies to those who are at least 40 years old). She also sufficiently alleges that she was qualified for the position. Plaintiff alleges that the three-year adjunct teaching contract at issue is offered "pursuant to a recommendation of reappointment by the Departmental P&B Committee after a review following 10 consecutive appointments preceding the reappointment date with a teaching assignment of at least 6 credit hours per semester." Dkt. No 2-3 ¶ 7. To demonstrate that she was qualified for the position, Plaintiff notes that she "consistently received satisfactory peer observations for 10 semesters," that "[s]he was invited back to teach Fundamentals of

9

Speech classes for 18 years," and that "in spring 2019 [she] was nominated for the BMCC Distinguished Teacher Award."  Dkt. No 2-3 ¶ 8.

Plaintiff also alleges an adverse employment action within the statute of limitations—the May 13, 2019 action declining to grant Plaintiff the three-year teaching contract.  In her complaint, Plaintiff checked multiple boxes pertaining to the adverse employment action she suffered: "did not hire me," "terminated my employment," and "did not promote me."  Dkt. No 2 at 5.  Although Defendants dispute Plaintiff's characterization of the contract as a promotion, Dkt. No. 15-1 at 31, non-renewal of a contract where an employee seeks renewal has been held to satisfy the requirement of an adverse employment action, *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 499–500 (2d Cir. 2009), *superseded by statute on other grounds*.

At the motion to dismiss stage, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation."  *Littlejohn*, 795 F.3d at 306, 311; *see id.* at 310 (noting the relationship between the *McDonnell Douglas* burden-shifting framework and the pleading standard in *Iqbal*, and concluding "[t]o the same extent that the *McDonnell Douglas* [framework] reduces the facts a plaintiff would need to show to defeat a motion for summary judgment prior to the defendant's furnishing of a non-discriminatory motivation, that presumption also reduces the facts needed to be pleaded under *Iqbal*"); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (setting out the burden-shifting framework that governs Title VII cases). "Circumstances that may 'give rise to an inference of discriminatory motive' include . . . 'preferential treatment given to employees outside the protected class.'" *Murtha v. New York State Gaming Comm'n*, 2019 WL 4450687, at *6 (S.D.N.Y. Sept. 17, 2019) (quoting *Chertkova v. Conn. Gen Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)); *see also Reiss v. Hernandez*, 2019 WL 4688639, at *7 (S.D.N.Y. Sept. 26, 2019) (same).  A plaintiff attempting to "show[] that the

employer treated [her] 'less favorably than a similarly situated employee outside [her] protected group' . . . 'must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.'" *Mandell v. Cnty. of Suffolk,* 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).

The Court now turns to whether Plaintiff has alleged facts sufficient to give plausible support to a minimal inference of discriminatory motivation. For the reasons discussed below, Plaintiff has failed to do so. She has not plead a prima facie case of race or age discrimination under Title VII or the ADEA, and therefore these claims must be dismissed.

### A.    Race Discrimination under Title VII

Plaintiff alleges that when she was appointed to a one-year guidance position in 2018, the department cited her "student teaching evaluations" as their "sole area of concern." Dkt. No. 2-3 ¶ 13. Plaintiff further alleges that she is "aware that a Male white Speech adjunct with less educational credentials and communications job experience than Plaintiff has been given a substitute teaching line of employment more than 10 times." *Id.* ¶ 21. In her opposition to Defendants' motion, Plaintiff cites that the eight candidates who were granted the contract were "white men, one older white woman, and one Black woman," but were not "nearly as qualified as Plaintiff." Dkt. No. 26 at 6. Plaintiff concludes that since there was not a published student evaluation score required to be granted the three-year contract, it seems "the required score is a manipulable subjective standard that changes depending on whether the college intends to discriminate against a faculty member or not." *Id.* at 8. [7]

---

[7] Although these facts are not alleged in the complaint but appear only in Plaintiff's pro se opposition, they are properly considered on this motion to dismiss. *See supra* note 1; *Nielsen*, 746 F.3d at 63.

Plaintiff does not cite any direct evidence of racial discrimination or animus.  Plaintiff cites reports and articles discussing CUNY's lack of diversity in its teaching staff and its purported failure to promote minorities, but none of these documents allege intentional discrimination causes this disparity.  *See Vlad-Berindan v. MTA New York City Transit*, 2014 WL 6982929, at *9 (S.D.N.Y. Dec. 10, 2014) ("Courts have dismissed failure-to-hire cases in which plaintiffs have alleged significant under-representation of members of their protected classes in the defendant-employers' staffs." (citing *Chandler v. University of Pennsylvania*, 927 F. Supp. 2d 175, 179 (E.D. Pa. 2013) (finding plaintiff's statistical evidence of the under-representation of African Americans in defendant university's graduate student body and faculty insufficient to plausibly claim intentional discrimination based on race))).  Plaintiff also fails to demonstrate that those who were granted the contract were similarly situated to her. *Mandell,* 316 F.3d at 379.  Plaintiff references that her student evaluations had improved after her one-year guidance period, but not that her student evaluations were comparable to the other candidates, or that she had credentials equivalent or better than to those who were chosen for the contract.

Plaintiff's conclusions that those outside of her protected classes who were offered the contract were not as qualified as she was, without further information supporting that conclusion, is not sufficient to sustain a minimal inference of discriminatory motivation for the adverse employment action.  *See Alvarez v. Rosa*, 2012 WL 651630, at *4 (S.D.N.Y. Feb. 28, 2012) (granting a motion to dismiss where plaintiff's complaint contained only conclusory statements that plaintiff was "better qualified" than the candidate chosen for a promotion and that candidate was not a member of plaintiff's protected classes); *Sulehria v. New York*, 2014 WL 4716084, at *6 (S.D.N.Y. Sept. 19, 2014) (granting a motion to dismiss a non-selection discrimination claim

for the same reason); *Moore v. City of New York*, 2017 WL 35450, at *12 (S.D.N.Y. Jan. 3, 2017) ("Beyond merely identifying himself as an African American male and noting that a number of [the] [d]efendants involved in the alleged adverse actions suffered by [the plaintiff] are 'white' and/or 'female,' [the plaintiff] proffers no other facts to support his claim that [the] [d]efendants took action against him because of his membership in a protected class."), *adopted by* 2017 WL 1064714 (S.D.N.Y. Mar. 20, 2017).  Furthermore, Plaintiff's citation that another less-qualified adjunct who was white and male was reappointed to a substitute teaching position, seemingly not the three-year position at issue, does not provide enough detail to demonstrate relevance to any alleged discriminatory motivation for this action.

Plaintiff also fails to allege sufficient facts to sustain a disparate impact claim.  Although Plaintiff points to reports and articles about CUNY's under-representation of minorities, none of these articles identify a particular employment policy that causes this disparity.  Dkt. No. 26-1 at 5; *see also Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 994 (1988) ("[W]e note that the plaintiff's burden in establishing a prima facie case [of disparate impact] goes beyond the need to show that there are statistical disparities in the employer's work force. The plaintiff must begin by identifying the specific employment practice that is challenged.").

### B.   Age Discrimination under the ADEA

When alleging age discrimination under the ADEA, "a plaintiff . . . must allege that 'age was the "but-for" cause of the employer's adverse action.'" *Vega*, 801 F.3d at 86 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)).  In addition to the allegations cited above, Plaintiff asserts that she was the "oldest Speech Department African American female adjunct lecturer eligible for the contract in 2019."  Dkt. No. 2-3 ¶ 9.  Plaintiff does not cite any direct evidence of age discrimination, and does not provide facts that support an inference of

discriminatory motive.  As discussed above, to establish a discriminatory motive with circumstantial evidence, Plaintiff must demonstrate that she was similarly situated to those outside of her protected class who were granted the contract.  Conclusory allegations of age discrimination and citation that some of those who were granted the contract were younger than her, without further evidence, cannot sustain the required minimal inference of discriminatory motivation for the adverse employment action.  *Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) ("[A] plaintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn." (quoting *Little v. New York*, 1998 WL 306545, at *5 (E.D.N.Y. June 8, 1998))).

## II.    Hostile Work Environment

Plaintiff's remaining Title VII and ADEA claims of a hostile work environment must be dismissed for failure to exhaust administrative remedies, as this allegation was not included in Plaintiff's EEOC complaint.  Dkt. No. 2-1.  "Exhaustion of administrative remedies through the EEOC is an 'essential element' of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court."  *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam) (quoting *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000)).  However, if a claim is "reasonably related" to one that *is* raised in the EEOC complaint, such a claim can still be pursued in federal court.  *Id.*  Here, Plaintiff's complaint alleged only race and age discrimination relating to CUNY's decision not to re-appoint her to her adjunct teaching position, which is not "reasonably related" to the allegations in her complaint of a hostile work environment.  *See Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008) (finding a single allegation of a discriminatory physical assault by a

14

supervisor to not be "reasonably related" to later claims of a hostile work environment); *Khater v. API Indus.*, 2017 WL 6515531, at *3 (S.D.N.Y. Dec. 19, 2017) (finding an allegation of a discriminatory termination to not be "reasonably related" to a later hostile work environment claim); *Vaughn v. Empire City Casino at Yonkers Raceway*, 2017 WL 3017503, at *13 (S.D.N.Y. July 14, 2017) ("[A] single act of discrimination is not sufficient to exhaust a plaintiff's remedies for a hostile work environment claim.").

Regardless, even if it had been included in the EEOC complaint, unless Plaintiff were able to demonstrate a continued hostile work environment and at least one act occurring within the three-hundred-day statute of limitations, the claim would be outside the statute of limitations based on the cited conduct occurring prior to May 10, 2019, as discussed above. *See Nat'l R.R. Passenger Corp.*, 536 U.S. at 118 (2002) ("In order for the charge to be timely, the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment.").

Furthermore, even if these allegations had been administratively exhausted prior to filing suit and were not time-barred, the alleged conduct does not rise to the level required to constitute a hostile work environment. "A hostile work environment under the ADEA, as under Title VII, is one in which 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment.'" *Bernstein v. New York City Dep't of Educ.*, 2020 WL 6564809, at *7 (S.D.N.Y. Nov. 9, 2020) (quoting *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 240 (2d Cir. 2007) (internal quotation marks omitted)). A plaintiff must allege that the conduct "(1) was objectively severe or pervasive in that it created an environment that a reasonable person would find hostile or abusive; (2) created an environment that the plaintiff subjectively perceived as hostile or abusive;

and (3) occurred because of the plaintiff's protected characteristic." *Sherman v. Fivesky, LLC*, 2020 WL 2136227, at *5 (S.D.N.Y. May 5, 2020).  Plaintiff must allege incidents that are "more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Littlejohn*, 795 F.3d at 321.

> Plaintiff alleges that:
>
> Speech Department faculty are aware of Chairman Kolbusz-Kijne's use of alcoholic beverages and the encouragement she offered staffers who distributed numerous invitations to department 'Happy Hours' held in area bars and restaurants.   On belief and communication Kolbusz-Kijne and the P&B discriminated against Plaintiff and have engaged in other discriminatory employment practices which can be documented.  Kolbusz-Kijne has encouraged a climate of fear among employees as demonstrated by the low number of responses to the Equity Survey.  Kolbusz-Kijne has declined to answer Plaintiff's request for an explanation of denial of reappointment.

Dkt. No. 2-3 ¶ 25.  In Plaintiff's opposition to Defendants' motion to dismiss, Plaintiff cites an incident in Spring 2019 where an African American colleague in the Speech Department "was verbally berated . . . a few feet from Kolbusz-Kjine's [sic] office" by two white male adjunct lecturers for filing "a 2018 EEOC complaint."  Dkt. No. 26 at 3.

These allegations do not meet the sufficient standard of severity or pervasiveness.  *Sealy v. State Univ. of New York at Stony Brook*, 834 F. App'x 611, 615–16 (2d Cir. 2020) (summary order) (finding that a single incident of a supervisor launching into racially hostile rant at plaintiff, "although reprehensible—does not establish that [the plaintiff's] workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive working environment"); *see also Wilson v. JPMorgan Chase Bank, N.A.*, 2021 WL 5179914, at *7 (S.D.N.Y. Nov. 8, 2021) (sustaining a hostile work environment claim due to "persistent racially derogatory comments directed at [plaintiff by supervisors] . . . and the repeated use of the n-word in Wilson's presence despite her protests"); *Sanderson v. Leg Apparel LLC*, 2020 WL 3100256,

at \*8 (S.D.N.Y. June 11, 2020) (denying a motion to dismiss a hostile work environment claim where plaintiff was assigned a disproportionately high workload compared to his white colleagues, his white colleagues received praise for their work that plaintiff did not, his white colleagues made racially insensitive remarks, and his white colleagues talked loudly while he was on the phone, but did not do so when white employees where on the phone).  Here, Plaintiff does not allege any sustained conduct pervasive enough to support a hostile work environment finding, nor any conduct severe enough.

Plaintiff's complaint is devoid of specific factual allegations that could make out a severe and persuasive pattern of conduct.  She alleges that Kolbusz-Kijne "has encouraged a climate of fear among employees," but does not allege any specific facts as to how Kolbusz-Kijne did so. Dkt. No. 2-3 ¶ 25.  This amounts to a conclusory statement, which cannot be taken as true when resolving a motion to dismiss.  *Twombly*, 550 U.S. at 555; *Ardigo v. J. Christopher Cap., LLC*, 2013 WL 1195117, at \*4 (S.D.N.Y. Mar. 25, 2013) (finding that conclusory allegation of "repeated, offensive, harassing comments" cannot support a hostile work environment claim (citing *Iqbal*, 556 U.S. at 678)).  Plaintiff does not cite any specific incident, in her presence or otherwise, that would provide the basis for an objective finding that any activity was severe or pervasive enough to support a hostile work environment claim.  Her allegations are simply that Kolbusz-Kijne gives preferential treatment to "staffers who distributed numerous invitations to department 'Happy Hours'" and that there was an incident where an African-American colleague was "verbally berated" by two white male adjunct lecturers for filing an EEOC complaint.  Dkt. No. 2-3 ¶ 25; Dkt. No. 26 at 3.  This represents "at most 'isolated and sporadic incidents, [which are] generally insufficient to establish a hostile work environment claim.'"  *Mohan v. City of*

*New York*, 2018 WL 3711821, at *15 (S.D.N.Y. Aug. 3, 2018) (quoting *Plahutnik v. Daikin America, Inc.*, 912 F. Supp. 2d 96, 106 (modification in original)).

Even if Plaintiff had provided sufficient factual support for her allegation that Kolbusz-Kijne "has encouraged a climate of fear among employees," or if her other allegations met the severity or pervasiveness standard, she never asserts that she herself experienced fear or subjectively perceived the conduct as hostile or abusive.  Dkt. No. 2-3 ¶ 25; *see also Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 513 (S.D.N.Y. 2010) (stating that a hostile work environment "is [not] something that exists in some absolute way, like poisonous chemicals in the air, affecting everyone who comes in contact with it") (Lynch, J. sitting by designation). Without any allegation that Plaintiff was affected by the conduct she cites, she cannot satisfy the requirement that the conduct "created an environment that the plaintiff subjectively perceived as hostile or abusive."  *Sherman*, 2020 WL 2136227, at *5; *see also Smeraldo v. City of Jamestown*, 512 F. App'x 32, 36 (2d Cir. 2013) (summary order) (affirming a grant of summary judgment for defendant where plaintiff did not state how the alleged hostile work environment affected him); *Alexander v. City of New York*, 2004 WL 1907432, at *18 (S.D.N.Y. Aug. 25, 2004) (finding that a "a generalized allegation of stigma with no accompanying evidence that plaintiff was personally affected by any such stigma, is not evidence of an alteration of plaintiff's working conditions sufficient to establish a hostile work environment").

Moreover, as to the Spring 2019 incident, a plaintiff need not be present when a racially derogatory comment is made for that comment to contribute to a hostile work environment because "the fact that a plaintiff learns second-hand of a racially derogatory comment or joke by a fellow employee or supervisor also can impact the work environment."  *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 2000); *see also Whidbee v. Garzarelli Food Specialties, Inc.*,

223 F.3d 62, 71 (2d Cir. 2000); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 571 (2d Cir. 2000);

*United States v. New York City Dep't of Educ.*, 407 F. Supp. 3d 365, 400 (S.D.N.Y. 2018).

However, it is also the case that a single comment made outside plaintiff's presence and of which

she was not aware at the time cannot make out the "subjective" component of a hostile work

environment claim.  *Harge v. City of New York*, 2021 WL 3855305, at *17 (S.D.N.Y. Aug. 26,

2021) ("'[R]emarks made outside a plaintiff's presence can be relevant to a hostile work

environment claim,' but this is true only when those remarks contribute to the Plaintiff's own

experience at the workplace.") (quoting *Leibovitz v. New York City Transit Authority*, 252 F.3d

179, 190 (2d Cir. 2001)); *Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505, 516 (S.D.N.Y.

2016) ("[I]t is . . . the law that a plaintiff does not have a viable hostile work environment claim

where that plaintiff is not the target of harassment, is not present for any harassment, and has no

knowledge of the harassment while it is ongoing.").

      Furthermore, Plaintiff also does not allege any connection between her protected

characteristics and her allegations that Kolbusz-Kijne gave preferential treatment to employees

who encouraged attendance at happy hours, that Kolbusz-Kijne created of a climate of fear, and

that white colleagues berated a black colleague over an EEOC complaint, as required to sustain a

hostile work environment claim.  *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d at 513 ("Title

VII does not prohibit employers from maintaining nasty, unpleasant workplaces . . . [r]ather, it

prohibits employers from discriminating against an employee (including by subjecting him or her

to hostile working conditions) because of such individual's [protected characteristic]. The

prohibited causal factor requirement thus flows directly from the text of Title VII, and from the

very essence of its nature as an anti-discrimination law.").  Plaintiff fails to allege a connection

between the allegedly hostile conduct and Plaintiff's protected characteristics.  *See Brennan v.*

*Metropolitan Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999) ("[A]n environment which is equally harsh for both men and women or for both young and old does not constitute a hostile working environment under the civil rights statutes.");  *Sherman*, 2020 WL 2136227, at *6 (S.D.N.Y. May 5, 2020) (holding that "[p]laintiff … must be the target of the hostile work environment and subjected to the hostility *because* of membership in a protected class"). Although it is possible for a member of a protected class to experience a more hostile environment than those outside of their protected class while being subject to the same treatment, Plaintiff does not provide sufficient detail to make such a showing.  *See Petrosino v. Bell Atl.*, 385 F.3d 210, 221 (2d Cir. 2004) ("The mere fact that [all employees] are . . . exposed to the same offensive circumstances on the job site, however, does not mean that, as a matter of law, their work conditions are necessarily equally harsh.").

## III.    Retaliation

Plaintiff's remaining Title VII and ADEA claims of retaliation must also be dismissed for failure to exhaust administrative remedies, as this allegation was also not included in the EEOC complaint.  Dkt. No. 2-1.  "The Second Circuit 'has recognized three kinds of situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action': (1) 'where the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination'; (2) where the plaintiff alleges 'retaliation by an employer against an employee for filing an EEOC charge'; and (3) 'where plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.'"  *Bernstein*, 2020 WL 6564809, at *9 (quoting *Butts v. City of New York Dep't of Hous.*, 990 F.2d 1397, 1402–03 (2d Cir. 1993)).  Here, although

Plaintiff alleged retaliation by her employer, the alleged retaliation is not so closely related to the alleged conduct in the complaint as to allow the requirement of administrative exhaustion to be waived. *See, e.g.*, *Burgess v. New York Stock Exch.*, 181 F. Supp. 2d 337, 340 (S.D.N.Y. 2002) (finding that a retaliation claim not mentioned in EEOC complaint was not "reasonably related" to the underlying discrimination complaint); *O'Hara v. Memorial Sloan Kettering Cancer Center*, 2000 WL 1459798, at *5 (S.D.N.Y. Sept. 29, 2000) (dismissing claim of retaliation where, "[p]laintiff's administrative charge does not mention retaliation and alleges no facts from which one could infer that Plaintiff was asserting a retaliation claim"); *Bernstein*, 2020 WL 6564809, at *10 (same).

Even if these allegations had been administratively exhausted, Plaintiff's allegations do not sufficiently plead retaliation. "To establish a prima facie case of retaliation, [Plaintiff] must show (1) that she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (citing *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir. 2006)). An employee engages in a "protected activity" when she opposes or complains about a discriminatory employment practice. *See Wimmer v. Suffolk Cty. Police Dep't*, 176 F.3d 125, 135 (2d Cir. 1999). Title VII retaliation claims require that a plaintiff "establish that his or her protected activity was a but-for cause of the alleged action by the employer," and not merely a "substantial" or "motivating" factor, which is sufficient for a discrimination claim. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362, 348 (2013). At the prima facie stage, a plaintiff may show causation indirectly, "by showing that the protected activity was closely followed in time by the adverse employment action." *Kwan v. Andalex Grp.*

*LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (quoting *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001)).

Plaintiff alleges that the denial of her contract renewal in May 2019 was due, in part, to her unfavorable answers to an Equity Survey submitted on April 22, 2019.  Dkt. No. 2-3 ¶ 24 ("Plaintiff believes that her unfavorable answers contributed to her being denied reappointment to the BMCC Speech Department.").  Plaintiff also notes in her response to Defendants' motion to dismiss that she followed up with an email on May 2, 2019, to Marveli Hilton, the administrative assistant to the Speech Department, where Plaintiff "complained about her treatment by the BMCC Speech Department and put forth that race and age discrimination had 'inhibited [her] from being offered opportunities that other adjuncts have enjoyed.'"  Dkt. No 26 at 7-8.[8]  Plaintiff goes on to conclude that her denial of the contract eleven days later was "under circumstances supporting the conclusion that her complaints of discrimination had led CUNY to retaliate against her by denying her the contract."  Dkt. No. 26 at 8.

Plaintiff's complaints qualify as a protected activity.  However, Plaintiff's conclusory statement regarding her belief that these answers merely "contributed to" her being denied the reappointment does not establish the "but-for" causation necessary to sustain a retaliation claim. Dkt. No. 2-3 ¶ 24; *Univ. of Tex. Sw. Med. Ctr.*, 570 U.S. at 362.  Furthermore, Plaintiff's citation of the temporal proximity between the protected activity and the denial of her contract is not sufficient to sustain an inference of retaliation where the reasons offered for failure to offer her the contract—"concern[s]" about her "student teaching evaluations"—pre-dated the alleged protected activity.  Dkt. No. 2-3 ¶ 13; *see also Lawtone-Bowles v. City of N.Y.*, 2019 WL

---

[8] Plaintiff references the survey responses and this email as Exhibit 2, but no such exhibit is attached to Plaintiff's filing.

652593, at *5 (S.D.N.Y. Feb. 15, 2019) ("[W]here the pleadings reveal 'adverse [disciplinary] actions [that] were both part, and the ultimate product, of an extensive period of progressive discipline' that began before any protected activity, the Court will not infer retaliatory animus based on temporal proximity alone." (alteration in original) (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001))).

## IV.    Section 1983

Where the defendant is a state actor, § 1983 is the exclusive remedy for violations of rights guaranteed under § 1981.  *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989). To state a § 1983 claim for employment discrimination based on race and age, in addition to alleging facts supporting a claim under Title VII or the ADEA, a plaintiff must allege that the deprivation of her constitutionally protected rights resulted from a "policy, custom, or practice" of the municipal defendant.  *See Patterson*, 375 F.3d at 226.  "A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised 'deliberate indifference' to the rights of the plaintiff and others encountering those subordinates."  *McLennon v. City of New York*, 171 F. Supp. 3d 69, 94 (E.D.N.Y. 2016) (first citing *Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13–14 (2d Cir. 2015) (formal policy officially endorsed by the municipality); then citing *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (widespread and persistent practice); then citing *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to deliberate indifference); and then citing *Jones v. Town of E.*

*Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (policymaking official's "express" or "tacit" ratification of low-level employee's actions)).  Although a municipality cannot be held liable under § 1983 for an employee's actions under a *respondeat superior* theory, *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), it can be held liable for a single act undertaken by an official with final policymaking authority under state law such that their "isolated" decision "could be said to represent official City policy," *Littlejohn*, 795 F.3d at 315 (citing *Soto v. Schembri*, 960 F. Supp. 751, 759 (S.D.N.Y. 1997)).

Even if Plaintiff had sufficiently pled a claim for race or age discrimination, Plaintiff has not pled facts to demonstrate that the alleged deprivation of her rights resulted from a "policy, custom, or practice" of the municipal defendant.  *Patterson*, 375 F.3d at 226.  Plaintiff references a number of reports and hearings concerning CUNY's lack of diversity in their teaching staff, but, as discussed above, those documents do not cite any CUNY policy that accounts for the disparity generally, much less the alleged deprivation of Plaintiff's rights.  Dkt. No. 26 at 2-3. Here, the single timely claim pled by Plaintiff is the denial of the three-year teaching contract, but she does not allege that this act was a result of any municipal policy.  Furthermore, Plaintiff has not sufficiently pled that a single act by Defendant Kolbusz-Kijne could constitute a municipal policy, namely that she possessed final decisionmaking authority for CUNY, or even BMCC, either through a legislative grant or a delegation of authority from those granted it.[9]

---

[9] It does not appear that Kolbusz-Kijne, as a Chairman of an academic department, would possess such authority.  *See* N.Y. Educ. Law § 6204(1) ("The control of the educational work of the city university shall rest solely in the board of trustees which shall govern and administer all educational units of the city university.").

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  Plaintiff's claims that were not administratively exhausted or are otherwise time-barred by statute of limitations are dismissed with prejudice, as any amendment to those allegations would be futile. *See Cortese v. Skanska Koch, Inc.*, 2021 WL 429971, at *18 (S.D.N.Y. Feb. 8, 2021) (complaint properly dismissed with prejudice to the extent claims are clearly time-barred); *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2015) (same).  This dismissal is without prejudice to Plaintiff filing an amended complaint in response to the Court's Opinion for the claims that are not time-barred within 90 days of the date of this Opinion.  The Clerk of Court is respectfully directed to mail a copy of this Opinion to the Plaintiff.  The Clerk of Court is respectfully directed to close the motion at Dkt. Nos. 15, 26, and 27.

        SO ORDERED.

Dated: November 29, 2021
      New York, New York

                                  LEWIS J. LIMAN
                             United States District Judge