```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
AYLEEN JAMES,                                                      :
                                                                   :
                              Plaintiff,                           :
                                                                   :      20-cv-10565 (LJL)
              -v-                                                  :
                                                                   :      MEMORANDUM AND
CITY UNIVERSITY OF NEW YORK,                                       :           ORDER
                                                                   :
                              Defendant.                           :
                                                                   :
-------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/25/2022

LEWIS J. LIMAN, United States District Judge:

Defendant City University of New York ("CUNY" or "Defendant") moves to dismiss the amended complaint ("Amended Complaint") of *pro se* plaintiff Ayleen James ("Plaintiff") and for an order denying the motion for reconsideration of this Court's Opinion and Order dated November 29, 2021. Dkt. No. 30.

For the following reasons, Defendant's motion to dismiss and for denial of reconsideration is granted.

### BACKGROUND

Plaintiff identifies as African American and was born in the year 1946. Dkt. No. 29 at 4. She asserts several claims against CUNY related to a letter she received in May 2019 signed by the Interim President of the Borough of Manhattan Community College ("BMCC") indicating that Plaintiff would not be reappointed through a three-year teaching contract to her position in the Speech, Communication, and Theatre Arts Department. *Id.* at 5. Previously, Plaintiff had served as an Adjunct Lecturer in the BMCC Department of Speech, Communication, and Theatre Arts from Fall 2001 to Spring 2019. Dkt. No. 2-3 at 2.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 5, 2020.  Dkt. No. 2-1.  On September 8, 2020, the EEOC dismissed Plaintiff's complaint and issued Plaintiff her Right to Sue letter.  Dkt. No. 2-2.

**PROCEDURAL HISTORY**

On December 14, 2020, Plaintiff filed suit against the BMCC and Eva Kolbusz-Kijne.[1] Dkt. No. 2.  In her complaint, Plaintiff brought claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-17, 42 U.S.C. § 1981, the Age Discrimination in Employment Act ("ADEA") of 1967, 29 U.S.C. §§ 621–634, the New York State Human Rights Law ("NYSHRL"), N.Y. Ex. Law §§ 290–297, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code. §§ 8-101 to 131.  Plaintiff alleged that defendants discriminated against her on the basis of her race as an African-American, her sex as a woman, and her age.  *Id.* at 3–4.  On June 25, 2021, the Court ordered CUNY be added to the matter as a defendant and served with a copy of the original complaint.  Dkt. No. 20.  On June 16, 2021, the defendants moved to dismiss the original complaint.  Dkt. No. 15.

On November 29, 2021, the Court issued an opinion and order dismissing BMCC and Kolbusz-Kijne from the action, Dkt. No. 28 at 7, and dismissing with prejudice: (i) the NYSHRL and NYCHRL claims, *id.* at 7 & n.6; (ii) the Title VII claims for gender discrimination, *id.* at 7; and (iii) the Title VII and ADEA claims concerning her 2018 appointment to a one-year adjunct lecturer position as time-barred, *id.* at 8; and (iv) the Title VII and ADEA claims for retaliation and hostile work environment, *id.* at 20.  The Court, however, found that Plaintiff's Title VII and ADEA claims for age and race discrimination against CUNY related to conduct post-May 10, 2019 were not time-barred, but nonetheless, dismissed these claims without prejudice after

---

[1] In Plaintiff's initial filing, Defendant Kolbusz-Kijne's name is misspelled as "Kolbusz-Kijine."

2

concluding that Plaintiff had not sufficiently pleaded supporting facts. *Id.* at 8–14. As for her Section 1981 claim (which the Court construed as a Section 1983 claim), the Court stated that even if Plaintiff had sufficiently pleaded a claim for race or age discrimination, Plaintiff had not pleaded facts to demonstrate that the alleged deprivation of her rights resulted from a "policy, custom, or practice" of the municipal defendant. *Id.* at 24.

On February 28, 2022, Plaintiff filed the Amended Complaint. Dkt. No. 29. In the Amended Complaint, she brings suit against CUNY, *id.*, and asserts (i) claims for race and sex discrimination under Title VII; (ii) claims for age discrimination under the ADEA; (iii) claims under NYSHRL and NYCHRL; and (iv) claims for race discrimination under 42 U.S.C. § 1981.[2] *Id.* Plaintiff also alleges that she was improperly terminated and subjected to disparate treatment and a hostile work environment. *Id.*

On March 22, 2022, CUNY filed a motion to dismiss the Amended Complaint. Dkt. No. 32. First, CUNY argues that to the extent Plaintiff is seeking reconsideration of the Court's prior order dismissing certain claims with prejudice, Plaintiff's motion should be dismissed as time barred and, separately, because Plaintiff fails to point to a change in controlling law or show that the Court's November 29, 2021 dismissal of these claims was in clear error or that reconsideration was necessary to prevent manifest injustice. *Id.* at 5. Second, CUNY argues that Plaintiff's claims should be dismissed as untimely and/or for failure to state a claim. *Id.* at 7–14.

In response to the motion to dismiss, Plaintiff filed a letter with the Court. Dkt. No. 36. In that letter, she states that she brought the present action to remedy two simple injustices: (1)

---

[2] While Plaintiff did not check the box indicating that she intended to assert a claim under Section 1981, she filled in her race as "African American" under the line that represented: "[T]his employment discrimination lawsuit is brought under . . . 42 U.S.C. § 1981 for intentional employment discrimination on the basis of race." Dkt. No. 29 at ECF p. 4.

3

"denial by BMCC of a 3-year contractual renewal [she] had indisputably earned through dint of [her] long and local service" and (2) her "discharge outright" "for no true reason other than that [she had] apparently—in BMCC's view—simply grown too old." *Id.* at ECF p. 1.  She states that because CUNY and BMCC had "no substantive basis for defending against [her] age discrimination claims," they "seized upon—undoubtedly successfully—a variety of technical bases for dispensing my case.  Most specifically, the requirement of filing a 'notice of claim' under state law, and the apparent miscalculation—by a mere 3 days—of the date by which [she] must have commenced an action on [her] federal claims." *Id.* at 1–2.  She continues that "[t]o the no-doubt important technical requirements upon which the Defendant here now moves, I have no answer" and that "[a]bsent some equitable or other basis, therefore, whether in law or fact, that would excuse my apparent failures, whether to timely serve a notice of claim and/or attend the *pro se* clerk's office a few days sooner than I did, I guess I am done." *Id.* at 2.

The Court heard oral argument on CUNY's motion on October 25, 2022.

## DISCUSSION

### I.   Claims Previously Dismissed With Prejudice

In the Amended Complaint, Plaintiff appears to allege claims for sex discrimination under Title VII, claims under NYSHRL and NYCHRL, and claims for hostile work environment.  Dkt. No. 29.  As noted, the Court previously dismissed these claims with prejudice after determining that amendment would be futile.  Dkt. No. 28 at 25.  In response to the initial motion to dismiss, Plaintiff conceded that she had failed to file a notice of claim and therefore the NYSHRL and NYCHRL claims against CUNY were properly dismissed, *id.* at 7, and the Court separately found that those claims were barred by the statute of limitations, *id.* at 7 n.6.  Plaintiff also failed to exhaust her administrative remedies with regard to her claims for sex discrimination and hostile work environment. *Id.* at 7, 14.  Since these claims were previously

4

dismissed with prejudice, the Court will construe Plaintiff's Amended Complaint as seeking reconsideration of this Court's previous opinion and order.

"Reconsideration 'is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources,'" *Sigmon v. Goldman Sachs Mortg. Co.*, 229 F. Supp. 3d 254, 257 (S.D.N.Y. 2017) (quoting *Steinberg v. Elkman*, 2016 WL 1604764, at *1 (S.D.N.Y. Apr. 6, 2016)), and thus is "narrowly construed and strictly applied," *Merced Irrigation Dist. v. Barclays Bank PLC*, 178 F. Supp. 3d 181, 183 (S.D.N.Y. 2016). "[R]econsideration may be granted because of 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Goldman Sachs Mortg. Co.*, 229 F. Supp. 3d at 257 (citation omitted).

To the extent Plaintiff is seeking reconsideration of this Court's prior order dismissing these claims with prejudice, that request is denied. Plaintiff does not point to any intervening change of controlling law or the need to correct a clear error or prevent manifest injustice with respect to these claims. In addition, the newly asserted facts in the Amended Complaint do not in any way undercut the Court's prior decision that amendment would be futile with respect to these claims: Plaintiff continues to assert claims related to conduct from May 2019 and thus her claims under NYSHRL and NYCHRL are still untimely. Plaintiff has also not provided any evidence that she filed a notice of claim in connection with her NYSHRL and NYCHRL claims or that she administratively exhausted her sex discrimination or hostile work environment claims.

## II. Claims Previously Dismissed Without Prejudice

### A. Race Discrimination and Age Discrimination

In her Amended Complaint, Plaintiff also asserts claims for race discrimination under Title VII and for age discrimination under the ADEA. These claims were administratively

5

exhausted, Dkt. No. 2-1, and the Court previously found that these claims were timely, Dkt. No. 28 at 8–9.  The Court stated that "[a] plaintiff has 90 days to file a Title VII or ADEA action after receipt of the notice of her right to sue."  *Id.* at 8 (citing 42 U.S.C. § 2000e-5(f)(1)).  The Court stated that Plaintiff alleged in her initial complaint that she received the notice on September 15, 2020.  *Id.*  The Court therefore concluded that her complaint, which was filed exactly 90-days later—*i.e.*, on December 14, 2020—was timely.  *Id.*  The Court nonetheless dismissed these claims without prejudice after finding that Plaintiff had not alleged facts sufficient to sustain an inference of discriminatory motive, *id.* at 12, 14, and failed to allege sufficient facts to sustain a disparate impact claim, *id.* at 13.

In Plaintiff's Amended Complaint, however, she now alleges that she received her Notice of Right to Sue letter from the EEOC on September 12, 2020—not September 15, 2020 as she had alleged in her initial complaint.  Dkt. No. 29 at ECF p. 6.  This new date does not appear to have been an error: in Plaintiff's response to Defendant's motion to dismiss, she acknowledges that her claims were filed three days outside the limitations period and thus are barred "[a]bsent some equitable or other basis, therefore, whether in law or fact, that would excuse my apparent failures."  Dkt. No. 36.  Plaintiff also confirmed that she "believed" she received her Notice of Right to Sue letter on September 12, 2020 at oral argument.

In light of this September 12th date that Plaintiff now alleges that she received her Notice of Right to Sue from the EEOC, Plaintiff's claims for race and age discrimination are untimely.  "Both the ADEA and Title VII provide that an employment discrimination suit must be filed within 90 days of the receipt of the right to sue letter from the EEOC."  *Ko v. JP Morgan Chase Bank, N.A.*, 730 F. App'x 62, 63 (2d Cir. 2018).  "Failure to bring suit within the 90-day limitation period is fatal to the claim unless subject to equitable tolling."  *Id.*; *see Johnson v. Al*

6

*Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984) ("While the 90-day rule is not a jurisdictional predicate, in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day." (internal quotation marks and citation omitted)). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine has 'acted with reasonable diligence during the time period she seeks to have tolled' and must prove that the circumstances are so extraordinary that the doctrine should apply." *Ko*, 730 F. App'x at 64 (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)). Here, Plaintiff filed her initial complaint three days after the 90-day period had expired. And, she has not presented evidence from which this Court could find either that she "acted diligently during the ninety-day time period or that the circumstances are so extraordinary in her case as to warrant equitable tolling." *Id.* at 64. At oral argument, Plaintiff explained that her delay resulted from the fact that she had sent her materials to a *pro se* legal clinic, her contact at the clinic was out of the office at that time, and she was waiting to hear back from them before filing her initial complaint in this action.³ However, these facts without more—which may establish "excusable neglect"—are not a sufficient basis for "equitable tolling." *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990) ("Petitioner urges that his failure to file in a timely manner should be excused because his lawyer was absent from his office at the time that the EEOC notice was received, and that he thereafter filed within 30 days of the day on which he personally received notice. But the principles of equitable tolling described above do not extend to what is at best a garden variety claim of excusable neglect."); *see South v. Saab Cars USA, Inc.*, 28 F.3d 9, 12 (2d Cir. 1994) ("[L]ack of due diligence on the part of plaintiff's attorney is

---

³ Plaintiff did not detail exactly how long she waited to hear back from the *pro se* legal clinic.

7

insufficient to justify application of an equitable toll."); *Stevenson v. City of New York Dep't of Correction*, 2011 WL 13175927, at *4 (E.D.N.Y. July 11, 2011), *aff'd sub nom. Stevenson v. New York Dep't of Corr.*, 489 F. App'x 517 (2d Cir. 2012) ("A plaintiff's inability to secure counsel, despite a diligent search during the statutory period, does not provide a sufficient basis for equitable tolling of the 90-day limitation period."); *McFarland v. Metro-N. Commuter R.R.*, 993 F. Supp. 210, 211 (S.D.N.Y. 1998) ("[A] plaintiff's inability to obtain counsel, however, is not a basis for equitable tolling.").

Accordingly, while the Court does not opine on the merits of Plaintiff's claims, Plaintiff's age discrimination and race discrimination claims must be dismissed on this technical basis as untimely.

B.     **Section 1981 Claim**

Plaintiff appears to assert a Section 1981 claim for race discrimination. Dkt. No. 29. The Court will construe Plaintiff's Section 1981 claim as brought under Section 1983. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989) ("[T]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units."); *Kuperman v. City of New York*, 2021 WL 4442855, at *5 (S.D.N.Y. Sept. 28, 2021) ("Like the Second Circuit in *Duplan*, however, courts in this District generally construe section 1981 claims against government entities—especially those brought by *pro se* plaintiffs—as causes of action brought under § 1983, and discuss whether the claims can survive pursuant to § 1983 caselaw." (internal quotation marks and citations omitted)).

"[W]hen the defendant sued for discrimination under § 1981 or § 1983 is a municipality . . . [,] the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir.

8

2004) (internal citation omitted). "A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised 'deliberate indifference' to the rights of the plaintiff and others encountering those subordinates." *James v. Borough of Manhattan Cmty. Coll.*, 2021 WL 5567848, at *11 (S.D.N.Y. Nov. 29, 2021) (quoting *McLennon v. City of New York*, 171 F. Supp. 3d 69, 94 (E.D.N.Y. 2016)).

In its November 29 opinion dismissing Plaintiff's original complaint, the Court held that Plaintiff had not stated a claim under Section 1983 as Plaintiff had "not pled facts to demonstrate that the alleged deprivation of her rights resulted from a 'policy, custom, or practice' of the municipal defendant." *Id.* at *12 (quoting *Patterson*, 375 F.3d at 226). The Court noted that while Plaintiff referenced reports and hearings concerning lack of diversity in CUNY's teaching staff, none of those documents cited a CUNY policy that accounted for that disparity. *Id.* The Court also noted that Plaintiff did not allege that the denial of her three-year teaching contract resulted from any municipal policy or that Defendant Kolbusz-Kijne possessed final decision-making authority for CUNY. *Id.* The Court also found that Plaintiff had not sufficiently pleaded a claim for race discrimination. *Id.*

In the Amended Complaint, Plaintiff attempts to address these pleading deficiencies. Dkt. 29-1. In particular, she alleges that "Speech, Communication and Theatre Arts Chairman Kolbusz-Kijne possessed final decision-making []authority for CUNY and BMCC, through a delegation of authority from those granted it," *id.*, and that "Kolbusz-Kijne and cohorts wrote

9

new CUNY and BMCC policy to purposely prevent Plaintiff from attaining a 3-year contract." *Id.*  In support of these additional allegations, she cites to a grievance opinion related to Plaintiff's claims against the university, which stated that in the decision to reappoint Plaintiff, the "determinative factor" was going to be her "teaching effectiveness." *Id.*  She also cites to an email from the BMCC Acting Director of Institutional Research and Data Analysis stating that "the rate needed for continuous faculty employment is published by the Chairperson of BMCC's academic departments." *Id.*  She further alleges that "CUNY/BMCC has not indicated to faculty the Student Evaluation of Faculty score needed for the 3-year adjunct teaching contract; nor is it contained in the 2017 Adjunct Handbook (New Exhibit); nor is it stipulated in the PSC/CUNY Pilot Program documents previously submitted." *Id.*  Finally, she alleges that "[b]y not publishing the evaluation rate" and "[b]y relying on Plaintiff's Student Evaluation of Faculty scores as the sole criteria for determining eligibility for the 3-year contract," "Kolbusz Kijne instituted new CUNY and BMCC policy." *Id.*

These additional allegations are insufficient to establish that Plaintiff's deprivation of constitutional protected rights resulted from a "policy, custom, or practice" of CUNY.  *See Patterson*, 375 F.3d at 226.  While Plaintiff alleges generally that failure to publish the student evaluation scores necessary for the three-year contract and/or relying on student evaluation scores as the sole criteria for determining eligibility for the three-year contract were "policies" of CUNY, Plaintiff provides no factual support for that claim.  To the contrary, the documents she cites in favor of this claim indicate that these were not CUNY policies or otherwise undercut these allegations.  Dkt. No. 15-6 ("adjunct faculty member . . . may be considered for the three-year appointment . . . following a *comprehensive review* and assessment of the adjunct's performance." (emphasis added)); *id.* ("Kolbusz-Kijne clearly apprised Grievant in her May 24,

10

2019 letter that scores in the '2' and '3' range were unacceptable."). In addition, the factual allegations that the chair of each academic department was responsible for publishing "the rate needed for continuous factually employment" is not in itself sufficient to establish that the chair of the department, here Kolbusz-Kijne, exercised "policymaking authority" for CUNY. *See Moore v. City of New York*, 2017 WL 35450, at *17 (S.D.N.Y. Jan. 3, 2017), *report and recommendation adopted*, 2017 WL 1064714 (S.D.N.Y. Mar. 20, 2017) ("Such allegations are insufficient because, even if Defendants enjoy supervisory positions within the DOC and made particular decisions with respect to the terms of Moore's employment, Moore has not alleged that Defendants are government lawmakers or 'final municipal policymakers' capable of setting municipal policy.").[4] Plaintiff also does not proffer additional facts from which it could be inferred that discrimination against African Americans in employment decisions constituted "a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware" or resulted from "failure by policymakers to properly train or supervise their subordinates." *James*, 2021 WL 5567848, at *11 (citation omitted).

The Amended Complaint, construed liberally, also does not plausibly allege that these alleged "policies" were the cause of Plaintiff's constitutional injuries. Plaintiff alleges that "Dr. Kolbusz-Kijne, purposely and maliciously, conspired with other members of the Speech department . . . to devise new CUNY and BMCC policy regarding the PSC/CUNY 3-year contract," that the "intent of the new policy was to facilitate Plaintiff's non-reappointment because the Plaintiff was the department's oldest, female, African American adjunct lecturer,"

---

[4] As the Court noted in its prior decision, "[i]t does not appear that Kolbusz-Kijne, as a Chairman of an academic department, would possess such authority." Dkt. No. 28 at 24 (citing N.Y. Educ. Law § 6204(1) ("The control of the educational work of the city university shall rest solely in the board of trustees which shall govern and administer all educational units of the city university.")).

11

and that "Plaintiff had more prior professional print media experience than any adjunct awarded the PSC/CUNY contract." Dkt. No. 29-1. However, Plaintiff does not support her conclusory allegation that the intent of the policy was to facilitate her non-reappointment as an African American adjunct lecturer. Nor does she explain exactly how the discrimination against her was caused by the alleged policies related to student evaluation scores and the three-year adjunct teaching contract. *See Barella v. Vill. of Freeport*, 16 F. Supp. 3d 144, 166 (E.D.N.Y. 2014) ("There must be a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" (citation omitted)). Instead, in the Amended Complaint, Plaintiff appears to focus on employment opportunities that were given to other white adjunct faculty members (such as serving as "de facto Deputy Chairman of the department"), which may have led those white adjunct faculty members to obtain the three-year adjunct teaching contract instead of herself. However, she does not make any allegations concerning the white adjunct faculty members' student evaluation scores, or allege any causal link between the failure to publish those scores or the focus on those scores in the process of determining eligibility for the three-year contract and white adjunct faculty members being benefited in a discriminatory manner.[5] Dkt. No. 29-1.

Plaintiff's Section 1983 claim also must be dismissed for failure to plausibly allege discriminatory intent.[6] *See Naumovski v. Norris*, 934 F.3d 200, 214 (2d Cir. 2019) (claim under

---

[5] Plaintiff does allege that her "student *retention* rate was similar to those granted the contract." Dkt. No. 29-1 (emphasis added).
[6] At oral argument, Plaintiff alleged that she had been told by counsel for CUNY/BMCC that the Deputy Chairman of the Speech, Communication, and Theatre Arts Department stated in a report that Plaintiff "lived in the past." While this comment may be relevant to establishing an inference of discriminatory intent for purposes of Plaintiff's age discrimination claim, it does not support this inference for purposes of Plaintiff's race discrimination claim under Sections 1981 and 1983—the only claim that is not barred by the statute of limitations or for failure to exhaust administrative remedies. *See Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998) ("Section

Section 1983 requires evidence of "discriminatory intent"). In her Amended Complaint, Plaintiff does not cite to direct evidence of racial discrimination or animus. Dkt. No. 28 at 2. Instead, she again seeks to create an inference of discriminatory motive through evidence of "preferential treatment given to employees outside the protected class." *Murtha v. New York State Gaming Comm'n*, 2019 WL 4450687, at *6 (S.D.N.Y. Sept. 17, 2019) (quoting *Chertkova v. Conn. Gen Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)); *see also Reiss v. Hernandez*, 2019 WL 4688639, at *7 (S.D.N.Y. Sept. 26, 2019) (same). Specifically, Plaintiff alleges that certain white and Latino male adjunct faculty members were offered "several CUNY and BMCC employment opportunities which were not offered to Plaintiff and other African American female adjuncts" and that she "had more prior professional print media experience than any other adjunct awarded" the contract. Dkt. No. 29-1. These additional allegations fail to raise a plausible inference of discriminatory intent for several reasons: primarily, while she alleges that she shared a title with these white and Latino adjunct faculty members, she does not otherwise support that she was "similarly situated in all material respects" to these individuals. *See Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). It is also not clear that more prior professional print media experience—even if true—would necessarily make her more qualified for a teaching position. *See Alvarez v. Rosa*, 2012 WL 651630, at *4 (S.D.N.Y. Feb. 28, 2012) (granting a motion to dismiss where plaintiff's complaint contained only conclusory statements that plaintiff was "better qualified" than the

---

1981 prohibits discrimination based on race in the making and enforcement of contracts . . . . It is also settled that Section 1981 does not prohibit discrimination on the basis of gender or religion[,] national origin[,] or age." (cleaned up)); *Barella v. Vill. of Freeport*, 16 F. Supp. 3d 144, 158 (E.D.N.Y. 2014) ("[T]he Court notes that Section 1981 prohibits racial discrimination only.").

candidate chosen for a promotion and that the candidate was not a member of plaintiff's protected classes).

Plaintiff's remaining allegations—including that two male faculty members (one identified as "white" and the other whose race is unidentified) berated an "African American, female" faculty member and that this same female faculty member was falsely accused of eating a "tuna fish sandwich"—do not appear to be relevant to any alleged discriminatory motivation related to this action.  Dkt. No. 29-1.

## CONCLUSION

Defendant's motion to dismiss and for denial of reconsideration is GRANTED.  The Clerk of Court is respectfully directed to close Dkt. No. 30 and to close the case.

SO ORDERED.

Dated: October 25, 2022
New York, New York

LEWIS J. LIMAN
United States District Judge